**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-01589-NYW-MDB

KENNETH KOHLER,

      Plaintiff,

v.

KRISTOPHER CZAJKOWSKI,

      Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the Motion to Dismiss (or "Motion") filed on June 25, 2025. [Doc. 11]. The Motion is fully briefed. [Doc. 17; Doc. 18]. Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Dismiss is respectfully **GRANTED**.

### BACKGROUND

The Court draws the following facts from the Complaint and Jury Demand, [Doc. 3], and takes them as true when ruling on the Motion to Dismiss. On April 18, 2024, George Sedlak's work truck was stolen. [*Id.* at ¶ 12]. An eyewitness to the theft, Jody Scott, described the suspect "as a white male in his younger 30s," with a beard, wearing "dark clothing [and a] blue backpack," and appearing "somewhat dirty." [*Id.* at ¶ 13]. Mr. Sedlak was able to track the location of his truck, and an individual named Cris Sartin located the vehicle. [*Id.* at ¶¶ 14–15]. When Mr. Sartin arrived, he saw a man "milling around the truck." [*Id.* at ¶ 15]. Mr. Sartin described the man as a "white male in his 20s" wearing "a backwards baseball cap, dark long sleeve shirt, and cargo shorts." [*Id.*].

Mr. Sartin took a picture of the individual and shared the photo with Mr. Sedlak and law enforcement.  [*Id.* at ¶ 16].  Mr. Sedlak posted the picture on Facebook to see if anyone recognized the person, and one of his friends, Kyle Miller, identified the suspect as a former co-worker, Plaintiff Kenneth Kohler ("Plaintiff" or "Mr. Kohler").  [*Id.* at ¶ 16]. This information was relayed to Defendant Kristopher Czajkowski ("Defendant" or "Officer Czajkowski"), a police officer with the Colorado Springs Police Department.  [*Id.* at ¶¶ 11, 17].  Officer Czajkowski pulled Mr. Kohler's photo from the Colorado Department of Corrections ("CDOC") website and "determined Mr. Kohler was the suspect based upon a comparison of the two photographs."  [*Id.* at ¶ 17].

Officer Czajkowski completed an arrest warrant application and affidavit identifying Mr. Kohler as the vehicle theft suspect.  [*Id.* at ¶¶ 21–22].  The arrest warrant was signed by a judicial officer on April 20, 2024, and Mr. Kohler was arrested on May 3, 2024.  [*Id.* at ¶¶ 24–25].  Mr. Kohler remained detained in the El Paso County Jail until May 30, 2024, when the district attorney moved to dismiss the charges against him.  [*Id.* at ¶¶ 26, 28].

Mr. Kohler claims that Officer Czajkowski performed an inadequate investigation before applying for the arrest warrant and "falsely claimed he had positively identified Mr. Kohler as the suspect in the case."  [*Id.* at ¶ 2].  Specifically, Plaintiff claims that Defendant did not prepare a photo line-up with the suspect to present to witnesses.  [*Id.* at ¶ 18].  He also ignored "the fact that Mr. Kohler was between 10–20 years older than [the person whom] the eyewitnesses described" and he performed only "a cursory comparison" of Mr. Kohler's CDOC photo and the suspect's photo.  [*Id.* at ¶¶ 18–19].  Plaintiff claims that if Officer Czajkowski had performed a better comparison, he would have seen that the suspect "had a gauge [earring]," while Mr. Kohler's CDOC photo shows that he does not.

2

[*Id.* at ¶ 19].  In addition, the suspect in the photograph is wearing shorts, with no visible tattoos.  [*Id.* at ¶ 20].  Plaintiff claims that "[i]f Officer Czajkowski had bothered to run the Colorado Springs Police Department[] Records for Mr. Kohler, he would have seen that Mr. Kohler has a tattoo of a skull with a steak [sic] through the head on his left calf."  [*Id.* at ¶ 20].  Plaintiff asserts that the arrest warrant affidavit did not establish probable cause for his arrest, but rather "contained false and/or misleading information and omitted material exculpatory facts that should have been clear to Officer Czajkowski at the time he drafted" the affidavit.  [*Id.* at ¶ 23].

Mr. Kohler initiated this lawsuit on May 20, 2025, raised three claims against Officer Czajkowski in his individual capacity, with each asserted under both 42 U.S.C. § 1983 and Colo. Rev. Stat. § 13-21-131:  (1) an unlawful arrest claim, [Doc. 3 at ¶¶ 30–39]; (2) a claim under *Franks v. Delaware*, 438 U.S. 154 (1978), [Doc. 3 at ¶¶ 40–47]; and (3) a wrongful prosecution claim, [*id.* at ¶¶ 48–54].  Officer Czajkowski moves to dismiss all three claims.  [Doc. 11].

## LEGAL STANDARDS

### I.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").  The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.   Qualified Immunity

Qualified immunity protects government officials from individual liability for actions carried out while performing their official duties so long as their conduct does not violate clearly established constitutional or statutory rights.  *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017).  Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff who must establish that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the defendant's action.  *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly established. *Washington*, 847 F.3d at 1197; *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001).  A pleading need not contain all the necessary factual allegations to sustain a conclusion that a defendant violated clearly established law, but must only satisfy the

4

minimum pleading requirements articulated in *Twombly*. *See Robbins*, 519 F.3d at 1249 (recognizing that a heightened pleading standard is not required).

## ANALYSIS

Mr. Kohler brings one claim of unlawful arrest, one *Franks* claim, and one claim of malicious prosecution.[1] [Doc. 3 at 6–9]. Each raises a federal constitutional claim under § 1983 and a state constitutional claim under § 13-21-131. *See* [*id.*].[2] Defendant argues that the legal standards that apply to Plaintiff's federal claims apply equally to his state claims (except for application of the doctrine of qualified immunity), *see* [Doc. 11 at 13–14],[3] and Plaintiff does not dispute this or argue that his federal and state claims should be analyzed separately, *see generally* [Doc. 17]. Therefore, the Court addresses each corresponding federal and state claim together. *Cf. Weidner v. Doe*, No. 24-1145, 2025 WL 1230531, at *6 n.6 (10th Cir. Mar. 5, 2025) (doing the same).

To state a claim of unlawful arrest under the Fourth Amendment, "the facts asserted in a complaint must show that it is plausible that both a 'seizure' occurred and that the seizure was 'unreasonable.'" *Asten v. City of Boulder*, 652 F. Supp. 2d 1188,

---

[1] Mr. Kohler captions his third claim as a claim for "wrongful prosecution." [Doc. 3 at 9]. He does not address this claim or its elements in his Response to the Motion to Dismiss. *See* [Doc. 17]. The Court construes this claim as a malicious prosecution claim. *Cf. Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1515 n.3 (10th Cir. 1994) ("Malicious prosecution 'is an intentional wrongful prosecution without just cause or excuse.'" (quoting *McIntosh v. City and Cnty. of Denver*, 55 P.2d 1337, 1338 (Colo. 1936)).

[2] Plaintiff asserts his *Franks* claim under federal and state law. [Doc. 3 at 7]. The Court could locate no Colorado authority recognizing a *Franks* claim under Colorado law, and neither Party cites any such authority. However, because Defendant proceeds as if a *Franks* claim is cognizable under Colorado law, the Court assumes without deciding that this type of claim can be raised under Colorado law.

[3] "Qualified immunity is not a defense to liability" under § 13-21-131. *See* Colo. Rev. Stat. § 13-21-131(2)(b).

1199 (D. Colo. 2009). An arrest is a quintessential "seizure" under the Fourth Amendment, *Romero v. Story*, 672 F.3d 880, 885 (10th Cir. 2012), and an arrest "is unreasonable unless it is supported by probable cause," *Michigan v. Summers*, 452 U.S. 692, 700 (1981); *see also Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) ("[A]n arrest warrant must be supported by probable cause to comply with the Fourth Amendment."). And to state a claim of malicious prosecution under § 1983, a plaintiff must allege that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Carbajal v. McCann*, 808 F. App'x 620, 630 (10th Cir. 2020).

"In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks*, 438 U.S. at 171). To state a claim under *Franks*, a plaintiff must allege that (1) the affiant included false statements in, or omitted information from, an affidavit; (2) the affiant acted knowingly or with reckless disregard for the truth; and (3) if the false information were omitted, or if the omitted information were included, the warrant would not have issued. *Id.* "When a *Franks* claim is based on omitted information, the plaintiff must demonstrate that 'the omitted information was "material" in that its inclusion would have vitiated probable cause for issuing the warrant.'" *Crothers v. Carr*, No. 23-8014, 2025 WL 1122681, at *5 (10th Cir. Apr. 16, 2025) (quoting *Kapinski*,

6

964 F.3d at 905).  Similarly, if a *Franks* claim is based on false statements in an affidavit, there must be a showing that "probable cause would have been vitiated by exclusion of the false statements from . . . the affidavit."  *Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 1244264, at *18 (D. Colo. Mar. 4, 2021), *aff'd*, No. 21-1107, 2022 WL 1837828 (10th Cir. June 3, 2022).

Therefore, Plaintiff's unlawful arrest claim, malicious prosecution claim, and *Franks* claim all require the Court to consider whether Plaintiff has plausibly alleged that the arrest warrant was unsupported by probable cause.  Probable cause exists "where the facts and circumstances within the . . . officer's knowledge and of which [the officer] had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested."  *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quotation omitted).  Probable case "is not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), and "[f]ormulation of probable cause 'does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands,'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975)).  It also does not "require the suspect's guilt to be more likely true than false."  *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (quotation omitted).  "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime, . . . requiring something more than a bare suspicion."  *Id.* (quotations omitted).

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit,

or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller*, 781 F.3d at 1197. But "[b]ecause probable cause is an objective standard, it may exist despite a police officer's false statements or material omissions." *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1195 (D. Colo. 2017). Where a plaintiff has alleged material misrepresentations or omissions in an arrest affidavit, courts "measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller*, 781 F.3d at 1197.

"The burden is on the plaintiff to 'make a substantial showing of deliberate falsehood or reckless disregard for truth' by the officer seeking the warrant." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990)). "[R]eckless disregard for the truth occurs whenever the affiant in fact entertains serious doubts as to the truth of his allegations" or when the circumstances "provide obvious reasons for doubting the truthfulness of the allegations." *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991).

Officer Czajkowski contends that Plaintiff's claims should be dismissed because the allegations in the Complaint establish that the arrest warrant, and Plaintiff's subsequent arrest, were supported by probable cause. [Doc. 11 at 5–13]. He argues that because Plaintiff has not adequately alleged a constitutional violation, he is entitled to qualified immunity against Plaintiff's federal claims and is entitled to dismissal of Plaintiff's state claims under Rule 12(b)(6). [*Id.*].

Mr. Kohler disagrees. He argues that Officer Czajkowski's "statement in the warrant affidavit that he positively identified the Plaintiff as the suspect" can be viewed as

8

either "an affirmative misrepresentation" or "a statement that required qualification by omitted information . . . in Officer [Czajkowski's] possession that indicated the Plaintiff was not the suspect." [Doc. 17 at 4]; *see also* [Doc. 11-1 at 5 (Officer Czajkowski stating in the affidavit that he "determined based on the photographs that Mr. Kohler was positively identified as the suspect in this case")].[4]   Plaintiff argues, essentially, that due to what he perceives as Officer Czajkowski's insufficient investigation and failure to consider other facts, Officer Czajkowski could not truthfully claim to have positively identified Mr. Kohler as the suspect.  [Doc. 17 at 5].  As for omissions, Mr. Kohler argues that Officer Czajkowski "intentionally omitted both the gauge earring and the lack of tattoo in the Affidavit."  [*Id.* at 6].  Specifically, he alleges in his Complaint that "[i]f Officer Czajkowski would have done more than a cursory comparison of the photograph [of the suspect], he would have seen that the suspect had a gauge [earring]," while "Mr. Kohler's [C]DOC photograph shows that he does not."  [Doc. 3 at ¶ 19].  In addition, Plaintiff alleges that the suspect's photograph "shows [that he] does not have any tattoos" on his legs, and "[i]f Officer Czajkowski had bothered to run the Colorado Springs Police Department[] Records for Mr. Kohler, he would have seen that Mr. Kohler has a tattoo of a skull with a steak [sic] through the head on his left calf."  [*Id.* at ¶ 20].

The Court begins with the alleged false statement in the affidavit.  *Puller*, 781 F.3d at 1197.  Mr. Kohler's Complaint identifies just one alleged misrepresentation:  that Officer

---

[4] In ruling on a Rule 12(b)(6) motion, a "district court may . . . consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).  The Court may consider the affidavit because it is referenced in Plaintiff's Complaint, [Doc. 3 at ¶¶ 22–24], it is central to Plaintiffs' claims, [*id.* at ¶¶ 33, 42, 49, 52], and no Party disputes its authenticity.

Czajkowski "falsely claimed he had positively identified Mr. Kohler as the suspect in this case." [Doc. 3 at ¶ 2]. However, the Court is not convinced that Plaintiff has alleged facts showing that Officer Czajkowski's statement that he "positively identified [Mr. Kohler] as the suspect in this case," [Doc. 11-1 at 5], is in fact an affirmatively false statement, let alone that Officer Czajkowski knew of or recklessly disregarded the falsity of this statement. The statement appears to reflect Officer Czajkowski's subjective belief that, based on his investigation, he had identified the proper suspect, and Plaintiff alleges no facts suggesting that Officer Czajkowski *knew* at the time that he was making this statement that Mr. Kohler was not the actual suspect. *See* [Doc. 3]. Nor does Plaintiff allege facts from which it could be inferred that Officer Czajkowski "entertain[ed] serious doubts as to the truth of his allegations." *Salmon*, 948 F.2d at 1140.

At best, Plaintiff suggests that Officer Czajkowski should have conducted a more detailed investigation, and that had he done so, he would have discovered information exculpating Plaintiff. *See* [Doc. 17 at 5]. But as explained in more detail below, "[t]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth." *Metzler v. City of Colo. Springs*, 841 F. App'x 94, 98 (10th Cir. 2021) (quotation omitted). "To the contrary, it is generally considered to [be token] negligence at most." *Id.* (quotation omitted). Thus, Plaintiff has not plausibly alleged that Officer Czajkowski knowingly or recklessly included a material false statement in the arrest warrant affidavit.

Next, the Court considers any "material information" allegedly omitted from the affidavit. *Puller*, 781 F.3d at 1197. As a preliminary matter, the Court observes that Mr.

Kohler's allegations assert that Officer Czajkowski *recklessly* omitted information from the affidavit, not that he *knowingly* omitted information.  *See, e.g.*, [Doc. 3 at ¶ 18 ("*If Officer Czajkowski would have done more than a cursory comparison of the photograph*, he would have seen that the suspect had a gauge [earring]." (emphasis added)); *id.* at ¶ 20 ("*If Officer Czajkowski had bothered to run the Colorado Springs Police Department[] Records for Mr. Kohler*, he would have seen that Mr. Kohler has a tattoo of a skull with a steak [sic] through the head on his left calf." (emphasis added)); *id.* at ¶ 21 ("*Instead of doing any of this minimal investigation*, Officer Czajkowski filled out an arrest warrant claiming he had positively identified the suspect as Mr. Kohler." (emphasis added))].[5]  To plausibly allege reckless disregard, a plaintiff must allege facts establishing "that the officer in fact entertained serious doubts as to the truth of his allegations."  *Stonecipher*, 759 F.3d at 1142 (quotation omitted).  And as mentioned above, "[t]he failure to investigate a matter fully . . . rarely suggests a knowing or reckless disregard for the truth," and is generally considered negligent at most.  *Metzler*, 841 F. App'x at 98 (quotation omitted).

---

[5] Plaintiff does allege that Officer Czajkowski "knowingly omitted material exculpatory facts known to him at the time he drafted the Affidavit." [Doc. 3 at ¶ 42].  However, this "is merely 'a formulaic recitation of the elements of a cause of action' and does not 'plausibly give rise to an entitlement to relief.'" *Weidner*, 2025 WL 1230531, at *8 (quoting *Iqbal*, 556 U.S. at 678–79).  The Complaint does not identify any omitted facts that were allegedly known to Officer Czajkowski at the time he drafted the affidavit. *See generally* [Doc. 3].  To the extent that Plaintiff argues in his Response that Officer Czajkowski "intentionally omitted both the gauge earring and the lack of tattoo in the Affidavit" and that "[b]ased upon the Defendant's own exhibits, Officer [Czajkowski] was in possession of the exculpatory information," [Doc. 17 at 6], these assertions are not supported by citations to Plaintiff's Complaint and are inconsistent with the actual allegations in Plaintiff's Complaint.  Moreover, Plaintiff cannot defeat the Motion to Dismiss by raising new factual allegations in his Response. *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1199 n.3 (D. Colo. 2015).

11

In his Complaint, Plaintiff alleges that Kyle Miller identified Mr. Kohler as the suspect after seeing the suspect's photograph on Facebook. [Doc. 3 at ¶ 16]. And in the arrest warrant affidavit, which the Court may properly consider at the motion-to-dismiss stage, *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017), Officer Czajkowski states that (1) he viewed the Facebook comment in which Mr. Miller identified Mr. Kohler; (2) he spoke to Mr. Miller directly; (3) Mr. Miller had confirmed that he believed the suspect was Mr. Kohler; (4) Mr. Miller had "talked to his superintendent who agreed that the individual in the picture was" Mr. Kohler; and (5) Mr. Miller had informed Officer Czajkowski that "he recognized Mr. Kohler [as the suspect in the photograph] because [Mr. Kohler] always wears the blue gloves and bracelet [that the suspect was wearing] in the photo," [Doc. 11-1 at 5]. Officer Czajkowski also stated that he compared the suspect's photograph with photographs from "law enforcement databases" and "determined" that Mr. Kohler was the suspect. [*Id.*].

In light of the information Officer Czajkowski had that connected Mr. Kohler to the theft, Officer Czajkowski's alleged failure to "run the Colorado Springs Police Department[] Records for Mr. Kohler" to ascertain whether Mr. Kohler had any tattoos, *see* [Doc. 3 at ¶ 20], does not demonstrate "knowing or reckless disregard for the truth," *Metzler*, 841 F. App'x at 98; *see also Weidner*, 2025 WL 1230531, at *8 (failure to conduct additional investigation after discovering incriminating evidence did not amount to reckless disregard). And Officer Czajkowski's alleged failure to notice the suspect's gauge earrings, and Mr. Kohler's lack of earrings, amounts to "negligence at most." *Metzler*, 841 F. App'x at 98. Based on the facts alleged in the Complaint and other properly considered documents, Plaintiff has not plausibly alleged that Officer Czajkowski

12

entertained "serious doubts as to the truth of his allegations" or the existence of "obvious reasons for doubting the truthfulness of the allegations," *Salmon*, 948 F.2d at 1140,[6] and the Court thus concludes that the Complaint does not plausibly allege that Officer Czajkowski knowingly or recklessly omitted material information from the affidavit. Therefore, the Court does not include this information in its probable cause analysis. *See Weidner v. McHale*, No. 23-cv-00339-NYW-SBP, 2024 WL 1094488, at *7 (D. Colo. Mar. 13, 2024) (this Court reviewing affidavit "as is," "looking at the totality of the circumstances before" the affiant officer, because there were "no specific material omissions to include, or false contents to exclude"), *aff'd*, 2025 WL 1230531.[7]

The Court's task now is to determine whether, in light of the above analysis, Plaintiff plausibly alleges that the affidavit did not supply probable cause for his arrest. *Id.*; *Puller*, 781 F.3d at 1197. To establish probable cause, the affidavit did not have to undertake a "fine resolution of conflicting evidence," *Hinkle*, 962 F.3d at 1220, or establish that Mr. Kohler's guilt was "more likely true than false," *Kerns*, 663 F.3d at 1188. Probable cause requires only that "the facts and circumstances within [Officer Czajkowski's] knowledge, and of which they have reasonably trustworthy information, are sufficient in

---

[6] The arrest warrant affidavit states that Mr. Sedlak informed Officer Czajkowski that he had contacted Mr. Kohler's parole officer and that the parole officer "said they talked to Mr. Kohler who denied being involved." [Doc. 11-1 at 4]. But an alleged suspect's denial of involvement in a crime would not provide "obvious reasons" to doubt Mr. Miller's identification of Mr. Kohler.

[7] The Complaint alleges that the affidavit "omits any mention of . . . the fact [that] two eye-witnesses described the suspect as decades younger than Mr. Kohler." [Doc. 3 at ¶ 43]. In his Response to the Motion to Dismiss, Mr. Kohler does not raise any argument about the discrepancy between the eyewitnesses' estimates of the suspect's age and Mr. Kohler's age. *See* [Doc. 17]. For purposes of completeness, the Court observes that the affidavit states that Mr. Kohler was, at the time, 47 years of age, [Doc. 11-1 at 3], and also mentions that the eyewitnesses estimated the suspect to be "in his younger 30s" and "in his 20s," [*id.* at 3–4].

themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quotation omitted). Here, the affidavit demonstrates that a person who was familiar with Mr. Kohler identified him as the suspect based on the photograph, told Officer Czajkowski that Mr. Kohler "always [wore] the blue gloves and bracelet" that the suspect was wearing in the photo, and told Officer Czajkowski that his boss had also identified Mr. Kohler as the suspect. [Doc. 11-1 at 5]. Under these circumstances, a reasonably prudent officer would have an adequate basis for finding probable to arrest Mr. Kohler for the vehicle theft. *See Maw v. Kearl*, No. 1:21-cv-00080-BSJ, 2023 WL 4463015, at *3 (D. Utah July 11, 2023) ("That these persons, who personally knew Mr. Maw, thought he looked like the man who had robbed the bank, amounted to reliable evidence to support Detective Kearl's opinion that Mr. Maw should be considered a robbery suspect and supported a probable cause affidavit." (footnote omitted)).[8]

Because Plaintiff has not alleged sufficient facts to plausibly establish that he was arrested without probable cause, he cannot establish a constitutional violation for purposes of his unlawful arrest or malicious prosecution claims. *Puller*, 781 F.3d at 1200.

---

[8] In his Response, Plaintiff argues that "whether the inclusion of the [gauge earring] and tattoo information would have negated probable cause is a question of fact that should be left for a jury and is not appropriate for a determination at this stage." [Doc. 17 at 7]. But "[i]n a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court." *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). Moreover, the Court here is not conclusively determining, as a matter of law, that there was probable cause for Mr. Kohler's arrest. Rather, the Court is deciding whether Plaintiff's allegations are sufficient to plausibly allege that the affidavit and his arrest lacked probable cause. For the reasons explained above, the Court concludes that they are not. *See Weidner*, 2025 WL 1230531, at *6 (affirming dismissal because "the amended complaint fail[ed] to plausibly allege [that the detective] acted without probable cause").

Similarly, for purposes of the *Franks* claim, Plaintiff has not plausibly alleged (1) that Officer Czajkowski omitted material information that would have vitiated probable cause or (2) Officer Czajkowski made a materially false statement that, if eliminated from the affidavit, would have destroyed probable cause. *Crothers*, 2025 WL 1122681, at *5; *Montoya*, 2021 WL 1244264, at *18.

Because Plaintiff has not plausibly alleged a federal constitutional violation, Officer Czajkowski is entitled to qualified immunity on Plaintiff's federal claims. And for the same reason, Plaintiff fails to state a plausible claim under Rule 12(b)(6), necessitating dismissal of his remaining state claims. The Motion to Dismiss is respectfully **GRANTED**, and Plaintiff's claims are **DISMISSED without prejudice**.[9]

In his Response, Plaintiff states that if the Court is unpersuaded by his arguments, he "would ask for the opportunity to amend the Complaint." [Doc. 17 at 8]. The Court declines to grant leave to amend without a formal motion, as required by the Local Rules. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). "A district court may deny leave to amend when a plaintiff fails to file a written motion and instead 'merely suggests []he should be allowed to amend if the court concludes [his] pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (cleaned up). If Plaintiff wishes to amend his Complaint, he may file a formal motion to amend that complies with

---

[9] Defendant asserts that Plaintiff's claims should be dismissed with prejudice, [Doc. 11 at 14], but he does not raise any argument in support. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court declines to undertake a futility analysis sua sponte and instead dismisses Plaintiff's claims without prejudice.

15

the Local Rules and the Federal Rules of Civil Procedure no later than **April 20, 2026**, after conferring with Defendant.  If Plaintiff does not file a motion to amend by this deadline, the Court will direct the Clerk of Court terminate this case without any further notice.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     The Motion to Dismiss [Doc. 11] is **GRANTED**;

(2)     Plaintiff's federal claims are **DISMISSED without prejudice** on the grounds of qualified immunity and Rule 12(b)(6);

(3)     Plaintiff's state claims are **DISMISSED without prejudice** under Rule 12(b)(6);

(4)     If Plaintiff wishes to amend his Complaint, he shall file a motion to amend on or before **April 20, 2026**; and

(5)     If Plaintiff does not file a motion to amend by the Court's deadline, the Court will direct the Clerk of Court to terminate this case.

DATED:  March 30, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

16